Exhibit A

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
NORTHWEST STAFFING RESOURCES, INC., an Oregon
corporation; RESOURCE STAFFING GROUP, INC., an Oregon
corporation; DULCICH STAFFING, LLC, an Oregon limited
liability corporation; and DOES 1 through 25,
inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*
U-HAUL COMPANY OF CALIFORNIA, INC., a California
corporation

| FOR COURT USE ONLY |
| --- |
| *(SOLO PARA USO DE LA CORTE)* |
| **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ORANGE<br>CENTRAL JUSTICE CENTER<br><br>JUN 27 2007<br><br>ALAN SLATER, Clerk of the Court<br><br>BY ___C. IBARRA___ DEPUTY |

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>ORANGE COUNTY SUPERIOR COURT OF CALIFORNIA<br>700 Civic Center Drive West<br>Santa Ana, California 92702<br>CENTRAL JUSTICE CENTER | CASE NUMBER:<br>*(Número de Caso):* **07CC07370**<br><br>JUDGE H. WARREN SIEGEL<br>DEPT. C13 |
| --- | --- |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Robert Yonowitz (State Bar No. 132081)                (949) 851-2424    (949) 851-0152
Stacey A. Zartler (State Bar No. 160859)
FISHER & PHILLIPS LLP
18400 Von Karman Avenue, Suite 400, Irvine, California 92612

| DATE:<br>*(Fecha)* **JUN 27 2007** | ALAN SLATER Clerk, by<br>*(Secretario)* FIDEL IBARRA | , Deputy<br>*(Adjunto)* |
| --- | --- | --- |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**

[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):

3. [X] on behalf of (specify): Northwest Staffing (Resources, Inc,)
   an Oregon corporation

   under: [X] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other (specify):
4. [ ] by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
& Plus

Code of Civil Procedure §§ 412.20, 465

10937832.tif - 7/5/2007 10:08:06 AM

1   Robert Yonowitz (State Bar No. 132081)
2   Stacey A. Zartler (State Bar No. 160859)
    FISHER & PHILLIPS, LLP
3   One Embarcadero Center, Suite 2340
    San Francisco, CA 94111-3712
4   Telephone (415) 490-9000
    Facsimile (415) 490-9001
5   ryonowitz@laborlawyers.com
    szartler@laborlawyers.com
6

7   Attorneys for Plaintiff
    U-HAUL COMPANY OF CALIFORNIA, INC.

8

9                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                   IN AND FOR THE COUNTY OF ORANGE

11                                              07CC07370

12   U-HAUL COMPANY OF CALIFORNIA,        Civil Action No.:
     Inc., a California corporation,
13                                         COMPLAINT FOR DAMAGES,
14                 Plaintiff,              RESTITUTION, INJUNCTIVE and
                                           DECLARATORY RELIEF
15         v.
                                           (1) FRAUDULENT INDUCEMENT
16   NORTHWEST STAFFING RESOURCES,            (Promise Without Intent to Perform);
     INC., an Oregon corporation; RESOURCE (2) FRAUD (Intentional
17   STAFFING GROUP, INC, an Oregon           Misrepresentation)
     corporation; DULCICH STAFFING, LLC,   (3) FRAUD (Intentional Concealment);
18   an Oregon limited liability corporation; (4) UNLAWFUL, UNFAIR AND
     and DOES 1 through 25, inclusive,     FRAUDULENT BUSINESS
19                                          PRACTICES (Cal. B & P Code
20                 Defendants.             § 17200);
                                           (5) FALSE AND MISLEADING
21                                         ADVERTISING (Cal. B & P Code
                                           § 17500);
22                                         (6) AIDING AND ABETTING
                                           /INDUCING/CONSPIRACY TO
23                                         VIOLATE Cal. B & P Code §§
24                                         17200 and 17500
                                           (7) BREACH OF CONTRACT
25                                         (8) CONTRACTUAL INDEMNITY;
                                           (9) EQUITABLE INDEMNITY AND
26                                         CONTRIBUTION
27
28                                         DEMAND FOR JURY TRIAL

                              1
                          COMPLAINT

1    Plaintiff U-HAUL COMPANY OF CALIFORNIA (UHC), on behalf of itself and the

2    general public, and demanding a jury trial, hereby complains and alleges upon information and

3    belief as follows:

## JURISDICTION AND VENUE

5    1.    This is a civil action grounded in breach of contract, indemnity, fraud, and unfair

6    business practices in violation of California Business and Professions Code sections 17200, et

7    seq., commonly known as the Unfair Competition Law.  This Court has jurisdiction over all

8    causes of action asserted herein pursuant to the California Constitution, Article VI, Section 10

9    which grants the Superior Court original jurisdiction in all cases except those given to other

10    trial courts. The Court also has jurisdiction over certain causes of action pursuant to California

11    Business and Professions Code sections 17203 and 17204, which provide for exclusive

12    jurisdiction for enforcement of the Business and Professions Code statutes in any court of

13    competent jurisdiction.  Additionally, jurisdiction may be exercised by virtue of the California

14    long-arm statute, California Code of Civil Procedure section 410.10.

15    2.    Venue as to each Defendant is proper in this county pursuant to California Code

16    of Civil Procedure sections 395(a), and 395.5 and *Easton v. Superior Court* (1970) 12 Cal.

17    App. 3d 243, 246-247, 90 Cal. Rptr. 642, 644 because the defendants are all foreign

18    corporations, incorporated and/or organized in the State of Oregon, doing business in

19    California, and according to the Secretary of State records, none of the defendants have

20    identified a principal place of business in California, thus allowing this action to be filed in any

21    county in this State.

## THE PARTIES

23    3.    At all times relevant to the Complaint, U-Haul Company of California operated

24    a repair shop located at 44511 Grimmer Boulevard in Fremont, California.

25    ///

26    ///

27    ///

28    ///

Irvine 472520.1

10937833.tif - 7/5/2007 10:18:28 AM

1    4.    Defendant Northwest Staffing Resources, Inc. is an Oregon Corporation which

2  also operates as a business enterprise in California. Resource Staffing Group, Inc. is an Oregon

3  Corporation which operates as a business enterprise in California. Defendants represent to the

4  public on their internet websites that both of the above entities are a part of "The RSG Family

5  of Companies." Northwest Staffing also represents on its website that Resource Staffing is its

6  "California affiliate." The Company's vendor disclosure statement identifies both Northwest

7  Staffing and Resource Staffing to be part of the "Dulcich Staffing, LLC" business structure.

8  Dulcich Staffing, LLC is an Oregon limited liability company which is the owner, operator,

9  alter ego, or controlling party of Resource Staffing Group and Northwest Staffing and operates

10  a business enterprise in California. Defendants Northwest Staffing Resources, Inc., Resource

11  Staffing Group, Inc., and Dulcich Staffing, LLC will be collectively referred to as

12  "Defendants."

13    5.    The internet websites of Northwest Staffing Resources (www.nwstaffing.com)

14  and Resources Staffing Group (www.resourcestaff.com) are identical in all material respects as

15  they relate to the fraud, unfair competition and misleading advertising claims in this lawsuit.

16    6.    Plaintiff is ignorant of the true names and capacities of Defendants sued herein

17  as DOES 1 through 25, inclusive, and therefore sues these Defendants by fictitious names. If

18  the true names and capacities of the DOE Defendants are ascertained, Plaintiff will amend the

19  Complaint to identify them by name. Plaintiff is informed and believes, and on that basis

20  alleges, that each of the fictitiously named Defendants is responsible in some manner for the

21  conduct herein alleged, and that Plaintiff's damages and other losses were caused thereby.

22    7. .    Certain of the individual Defendants, including any individual DOES 1 through

23  25, and each of them, partially or wholly own and/or control one or more of the other

24  Defendants; that said individual Defendants are the sole or majority stockholders, officers,

25  and/or directors of the Defendant companies; that said Defendant companies are controlled and

26  managed by said individual Defendants, that the moneys among said Defendants are

27  commingled and intermingled; that there is a unity of ownership and interest among them; that

28  the credit and goodwill of one is used for the credit and goodwill of the others; and/or that one

Irvine 472320.1

1  or more companies was incorporated and/or capitalized with funds insufficient to meet

2  reasonable requirements and operations; and that, as a result of the foregoing, one or more of

3  the Defendant companies was the instrumentally, conduit, adjunct, and/or alter ego of one or

4  more of the other Defendants.

5       8.     At all relevant times, Defendants, and each of them, was the owner, agent,

6  representative and/or employee of each of the remaining Defendants and, in doing the things

7  alleged herein, was acting within the scope of such agency, ownership and/or employment.

8       9.     At all relevant times, Defendants, and each of them, was also acting in their own

9  individual capacities and for their own purposes in conspiring, aiding/abetting, authorizing,

10  ratifying, consenting to, condoning, approving and performing the acts alleged herein.

11       10.    At all relevant times, Defendants, and each of them, ratified, consented to,

12  condoned, approved and performed the acts alleged herein in concert with each of the other

13  Defendants and therefore the acts and omissions of each Defendant are imputable to each of the

14  other Defendants.

15  <u>GENERAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION</u>

16  <u>MISREPRESENTATIONS AND MISLEADING ADVERTISING</u>

17       11.    Defendants have engaged and continue to engage in a pattern and practice of

18  falsely, unfairly, unlawfully, and fraudulently advertising, promising, misrepresenting and

19  contracting that it is, and intends to be, the employer of the employees assigned to their clients,

20  for the purpose of inducing said clients into entering into business relationships with them

21  while, in fact, never actually intending to assume the responsibilities as the employer of these

22  employees.

23       12.    In their marketing, advertising and bidding materials (*See e.g.*, Exhibit A), in the

24  employment materials given to its employees (*See e.g.* Exhibit B), in their contracts with clients

25  (*See e.g.* Exhibit C), and on Defendants' public internet websites (www.nwstaffing.com; and

26  www.resourcestaff.com), Defendants have engaged in a policy and practice of falsely,

27  affirmatively and unequivocally representing, guaranteeing and/or insisting that one and/or all

28  of the Defendants are the employer and/or sole employer of the employees they assign to

4
COMPLAINT

Irvine 472520.1

1  clients including Plaintiff. Such representations and guarantees include that Defendants will

2  assume responsibility for soliciting, accepting and processing employment applications, prior

3  employment verification and reference checks, verifying identity and eligibility to work in the

4  United States, drug testing, skills testing, interviewing, making written offers of employment,

5  hiring, providing personnel policies and procedures, providing a comprehensive 25-page

6  employee handbook, complaint procedures, grievance procedures and safety rules and training,

7  providing a written and oral orientation program, providing workers' compensation and

8  liability insurance, handling workers' compensation claims, deciding wages and wage

9  increases, tracking employee time on Defendants' timecards, processing paychecks, processing

10  tax paperwork and employment taxes, FICA, FUTA, SDI, social security, unemployment

11  insurance, federal and state tax deductions, providing medical dental and vision benefits,

12  comply with all employment and labor laws, including anti-harassment and discrimination

13  laws, disability accommodation laws, family and medical and jury duty leave.

14       13.    Defendants' assigned employees are required to agree that they will not accept

15  employment with the entity with whom they are assigned absent prior arrangement and

16  approval of Defendants. Defendants' clients, such as Plaintiff, pay an agreed upon price for

17  utilizing these employees. Defendants' employees are employed with the promise that

18  Defendants is, and will be, their employer unless other arrangements are made.

19       14.    On or about June 9, 2003, Defendants began presenting marketing bids to have

20  one or more of the Defendants provide temporary workers to some of Plaintiffs' California

21  worksites, including the Fremont, California site. (See Exhibit A). The materials promise that

22  Defendants will be the employer of the assigned employees. RSG Branch Manager Defendant

23  Rod Crowell followed-up on the June 2003 bid as it related to the Fremont, California UHC

24  site. Crowell continued to make the representations described above to Bob Aleo in Human

25  Resources at U-Haul International, Inc., as well as to Ricardo Briceno, UHC Shop Manager in

26  Fremont, including that Defendants would be the sole employer of the assignees with all of the

27  duties and responsibilities, and rights, such as hiring, firing, insurance, benefits, etc., as are

28  fully set forth above. Like all of Defendants' press, the marketing and bidding materials given

Irvine 472520.1

1   to UHC affirmatively and unequivocally falsely and/or deceptively represented that the workers

2   would be employees of Defendants, and Defendants would incur the personnel, payroll,

3   insurance and other responsibilities and duties set forth above in Paragraph 12.

4       15.    These representations were false when made as Defendants never intended for

5   Defendants to be the employer of these employees as evidenced by a June 29, 2004 letter from

6   RSG and statements made by Crowell to UHC and others in late June and early July 2004, *that*

7   *RSG is not the employer* of these employees but rather provided only "a payroll service" and

8   *makes no decisions regarding the employment of its own employees!*  Moreover, these

9   employees were never employed by UHC; indeed, by virtue of their agreements with RSG,

10  they were prohibited from applying for employment with UHC. (Exhibits B and C).

<u>THE STAFFING SERVICES AGREEMENT</u>

12      16.    In reliance on these false promises, Plaintiff decided to enter into a business

13  relationship with RSG for the provision of temporary workers at its Fremont, California site.

14  The relationship was formalized in a contract between Plaintiff and Defendants which was

15  negotiated and executed on May 12, 2004, by Briceno and Crowell. Pursuant to the written

16  contract, Defendants were to employ and assign certain of its employees to Plaintiff at the UHC

17  Fremont location for a 32% mark-up on their pay. (Exhibit C)("It is mutually agreed that UHC

18  retains Staffing Agency to assign certain of its employees to fill UHC's need for temporary

19  personnel...")(Exh. C § I(a)).

20      17.    Consistent with their marketing materials, Defendants made the following false

21  and misleading representations in the May 12, 2004 Staffing Services Contract (hereinafter

22  "Services Contract"):

23          "It is understood and agreed that .... all individuals assigned to U-
            Haul are employees of Staffing Agency [RSG] and not U-Haul."
24

25  (Exh. C, § I(b)).

26          "As the employer, Staffing Agency shall, among other things,
            maintain all necessary personnel, payroll and other records for its
27          employees assigned to U-Haul; compute its employees' wages and
            withhold applicable federal, state and local taxes, federal social
28          security payments and all other required withholdings;

6
COMPLAINT

Irvine 472520.1

    (i)    remit employee withholdings to the proper governmental authorities, and make employer contributions for federal FICA, Workers' Compensation insurance, and federal and state unemployment insurance premiums;

    (ii)    pay net wages and fringe benefits, if any, directly to its employees;

    (iii)    verify employment eligibility in conformity with federal immigration laws and maintain all necessary records for its employees assigned to U-Haul, including Form I-9's and;..."

Exh. C § I(c). The list goes on. Defendants retained sole right and responsibility over its employees as follows:

"Staffing Agency shall have the sole right and responsibility to recruit, interview, test, evaluate, hire, supervise, determine compensation, promote, discipline, and discharge its employees assigned to U-Haul. Staffing Agency employees shall not be entitled to holidays, vacations, disability insurance, pensions or retirement plans or any other benefits offered or provided by U-Haul to its direct employees."

Exh. C, § I(d). Defendants' employees were required to sign an Acknowledgement that their benefits were separate from UHC employee benefits and waiving any right to same. They were also given handbook materials regarding Defendants' employee benefits. (Exhibit B)

    18.    In the Services Contract, Defendants represented that it was responsible for all employee selection and background checks for its employees assigned to UHC, including interviewing, testing, screening, verification of references, education, prior employment, drug testing and credit searches, as well as FMLA and ADA compliance. (Exh. C, § II)

    19.    UHC was prohibited from terminating Defendants' employees. Defendants also specifically retained the right to reassign any employee to another client should UHC be dissatisfied with a worker's performance. (Exh. C, § II)

///

///

///

///

///

7

COMPLAINT

20.    Defendants further represented that it was wholly responsible for the employees

assigned to UHC as follows:

"III.    WORKER'S    EMPLOYMENT    STATUS    AND
RECORDS

Staffing Agency and not U-Haul is the employer of the worker and
retains the sole right to recruit, interview, test, hire assign,
evaluate, discipline and discharge the worker, and to establish and
modify wages and benefits, including vacations and other paid and
unpaid leave, and to prepare and maintain all payroll records and
pay and withhold all wages and related employment taxes and
deductions."

(Exh. C, § III).

21.    Defendants represented that they would have responsibility for maintaining

injury/illness records, including workers' compensation, payroll and benefit records for 7 years,

and would handle all employee grievances. (Exh. C, § III). Defendants also represented that it

would maintain "at its sole cost and expense" insurance coverage for its employees, including

general liability, umbrella, workers' compensation and employer's liability. (Exh. C, § IV).

22.    Defendants also represented and agreed that they had the sole power to resolve

employee grievances regarding treatment while working at the UHC site. (Exh. C, § IV). By

definition, this provision makes it Defendants' responsibility to address the grievances raised

by its employees seeking union representation in June 2004 and their claims that they were

wrongfully terminated for union organizing thereafter.

23.    Defendants agreed that they would "observe and comply with all local, state and

federal laws, rules, regulations and ordinances now or hereafter in force that in any way pertain

to these contracted services....." including all laws pertaining to wages and hours of work,

posting notices, taxes, and discrimination or retaliation based on "any category protected by

law." (Exh. C, § V).

## REPUDIATION OF REPRESENTATIONS AND AGREEMENTS

24.    On June 14, 2004, UHC was made aware of a union organizing drive at its

Fremont location. UHC received a letter from the International Association of Machinists and

Aerospace Workers Union (IAM) which claimed representation of majority of maintenance

8
COMPLAINT

1   repair employees at the Fremont location.   An R petition was filed naming UHC and

2   Defendants as joint employers.

3        25.   On June 29, 2004, in spite of past, continuing and future representations to the

4   public, its clients and its employees, as well as past, continuing and future staffing contracts

5   (wherein Defendants' unequivocally state that Defendants were and are the employer of the

6   employees they assign to their clients, including UHC), Defendants fraudulently, unfairly and

7   unlawfully asserted in written correspondence to UHC that Defendants were essentially only a

8   "payroll service" and were not the employer of the employees assigned to work at UHC.

9   (Exhibit D).

10        26.   Plaintiff is informed and believes that Defendants made similar unlawful,

11   fraudulent and unfair oral and written statements, including a statement made to UHC's former

12   outside counsel and an affidavit under oath to NLRB investigators, to the effect that RSG was

13   NOT the employer of the employees assigned to the UHC Fremont location.   Plaintiff is also

14   informed and believes that one or more of Defendants' employees including, but not limited to

15   Branch Manager Rod Crowell, offered to testify under oath at the NLRB proceeding that

16   Defendants provided only a payroll service and was NOT the employer of the assigned

17   employees.

18        27.   The Services Contract between Defendants and UHC, which unequivocally

19   stated in as clear as terms as is possible that all individuals assigned to UHC were employees of

20   Defendants and not UHC, was in effect when the contrary statements above were made.   Also,

21   Defendants' internet websites represented then and have continued to represent to the public, to

22   prospective clients and employees, and to current clients and employees, that they ARE the

23   employer of the employees they provide.   In fact, Defendants provided temporary employees to

24   UHC based on the same false representations and contractual promises at the UHC location in

25   Sacramento, California.   On information and belief, Defendants continue to enter into contracts

26   with clients and relationships with individuals where they continue to represent to all involved

27   that they ARE the employer.

28   ///

9

COMPLAINT

Irvine 472520.1

28.    Prior to this time, no one affiliated with Defendants ever indicated that there was any circumstance where they would not consider themselves the employer of the assigned employees. To the contrary, the only promises and representations Defendants made were that Defendants unequivocally were the *sole employer* of the employees assigned to UHC in Fremont. Plaintiff would have never entered into the arrangement with Defendants if it had known the truth.

29.    During the midst of the NLRB election proceedings, on or about July 2, 2004, Defendants gave 30 days' notice of its desire to terminate the Services Contract with UHC in Fremont effective on August 2, 2004. Because Defendants insisted on the sole right and responsibility for determining and administering the terms and conditions of these employees' employment, including hiring, termination and/or reassignment, UHC had no choice but to tell these Defendants' employees to depart with Defendants for reassignment.

30.    These workers were never UHC employees, were not on the UHC payroll, benefit or insurance plans; they were, at Defendants' insistence, Defendants' employees. Indeed, the Defendants' employee handbook given to these employees specifically prohibited Defendants' employees from soliciting employment with UHC. (Exhibit B). However, to Plaintiff's knowledge, Defendants did not communicate to their employees that they were terminating the UHC Services Contract; nor did Defendants attempt to reassign employees working at UHC to other Defendants' clients. Nor did Defendants terminate and/or reassign their employees' employment, as they were required to do in ¶5 of the Employment Agreement they executed with these employees, due to Defendants' cancellation of its contract with UHC. (Exhibit B) Contrary to its representations, Defendants simply abandoned their employees on UHC's Fremont site. This is despite the fact that, pursuant to Defendants' contract with UHC, Defendants retained the sole right to terminate and/or reassign those employees. This left UHC with no alternative but to tell Defendants' employees to leave the UHC worksite as they were not UHC but Defendants' employees.

///

///

Irvine 472520.1

10937883.tif - 7/5/2007 10:18:28 AM

1       31.    In that same time period, the NLRB directed an election of a bargaining unit at

2    UHC which did not include Defendants as an employer or joint employer of their own self-

3    declared employees; but rather included them in the UHC employee bargaining unit as

4    "employees supplied by temporary employment agencies....."

5       32.    Plaintiff is informed and believes and alleges that Defendants' conduct and

6    comments, including their unabashed eschewing of their "employer" role (which had been, and

7    continues to be clearly touted publicly), was fraudulent, unfair and unlawful, and part of a

8    scheme and practice by all Defendants to mislead clients and employees into accepting staffing

9    service relationships/contracts by making false representations of employer status, while at the

10    same time never intending to accept that status where negative consequence to Defendants

11    could result.

12       33.    Unfair labor practice charges were filed against UHC for the elimination of the

13    Defendants' employees' positions, which would not have occurred had Defendants' not

14    engaged in the unfair, deceptive and unlawful conduct, including repudiating their self-

15    promoting and misleading "employer" representations and abandoning their employees on the

16    UHC site and instead honored Defendants' obligation to terminate its own employees when

17    Defendant cancelled the contract. As a result, UHC has incurred substantial costs, attorneys'

18    fees and other expenses, has been held liable and has been forced to pay back wages to

19    Defendants' employees in amounts to be fully determined. The unfair labor practice charges

20    resulted in a settlement wherein UHC has been forced to incur back pay liability to Defendants'

21    employees (who were never even on UHC's payroll), in amounts exceeding $279,000, as well

22    as substantial attorneys' fees, costs and administrative expenses relating to these unfair labor

23    practice charges and payment processing.

24       34.    Moreover, as set forth fully below, Defendants falsely promised and guaranteed

25    in its marketing to Plaintiff and agreed in the Services Contract, that it would release,

26    indemnify, defend and hold UHC harmless from all damages, claims and liabilities resulting

27    from its acts, errors and omissions, which undoubtedly include representing itself and

28    contracting to be the sole employer of these employees, while eschewing its employment

11<br>COMPLAINT

1    obligations and abandoning its employees at UHC's site. (Exhibit C)  By letter dated August 2,

2    2006, Plaintiff demanded that Defendants indemnify it in connection with the unfair labor

3    charge proceedings.  In spite of its representations and contracts, Defendants have stated,

4    including by letter dated August 9, 2006, that it has no obligation to indemnify Plaintiff and has

5    refused to indemnify Plaintiff for its conduct.

6          35.     Plaintiff seeks restitution of all losses caused by Defendants' fraudulent, unfair,

7    unlawful and deceptive scheme and injunctive relief prohibiting Defendants from representing

8    to the public on its websites or otherwise, or entering into contracts providing that Defendants

9    are the employer of the individuals assigned to their clients.

10                    **THE CONTRACTUAL INDEMNITY CLAUSES**

11              **AND DEFENDANTS' REFUSAL TO INDEMNIFY UHC**

12          36.     The Services Contract between Plaintiff and Defendants contained several broad

13    clauses wherein Defendants agreed to hold UHC harmless from damages, claims and liabilities

14    caused by its conduct.  First, Defendants agreed that it:

15                 "[A]ccepts exclusive liability for noncompliance with the
                   foregoing laws and shall release, indemnify, defend, and hold
16                 harmless U-Haul and any affiliated or related corporations,
                   employees, or agents from any and all claims, liabilities, damages,
17                 demands, judgments, costs or expenses (including attorneys' fees
                   and expert witness fees) of any kind or nature which Staffing
18                 Agency, an employee of Staffing Agency, or any other third party
                   may have which arise directly or indirectly under any theory of law
19                 pertaining to these contracted services.  The foregoing duties of
                   indemnity shall apply notwithstanding any negligence of U-Haul
20                 or its affiliated or related corporations, employees or agents which
                   may have occurred with respect to any such matter."

21

22    Exhibit C, § V.

23          37.     Second, in a separate Section VI, entitled "INDEMNIFICATION", Defendants

24    agreed in the Service Contract as follows:

25                 Staffing Agency agrees to indemnify, defend, and hold U-Haul and
                   any affiliated or related corporations, its agents and employees,
26                 harmless from and against any and all liability, expenses (including
                   court costs, attorneys' fees, and expert witness fees), and claims for
27                 damage of any nature whatsoever, whether known or unknown,
                   which U-Haul may incur, suffer, become liable for, or which may be
28                 asserted or claimed against U-Haul as a result of the acts, errors, or

                                      12
                                  COMPLAINT

Irvine 472520.1

1    omissions of Staffing Agency or Staffing Agency's employees,
     including but not limited to, . . . all claims arising under... the
2    National Labor Relations Act . . . and all other applicable state, local
     or federal statutes, . . . all common law causes of action, including
3    claims for breach of contract,....wrongful discharge, ... tort, or any
     other personal injury or damages, and all claims for wages bonuses,
4    allowances, benefits, or other compensation in money or in kind
     and/or any claims asserted by Staffing Agency's employees arising
5    out of their employment or termination of employment with Staffing
     Agency or their assignment or termination of assignment with U-
6    Haul... Staffing Agency and U-Haul intend that Staffing Agency's
     obligation to indemnify U-Haul be construed broadly so as to
7    provide the greatest possible protection to U-Haul and ensure that the
     parties' staffing arrangement contemplated by this Agreement has no
8    adverse financial or administrative impact on U-Haul. Staffing
     Agency agrees that U-Haul may compromise or settle any such claim
9    without affecting Staffing Agency's indemnification obligations
     hereunder.

10   Exhibit C, § IV (emphasis added.)

11       38.    On August 4, 2006, Plaintiff sent a written demand to Defendants to indemnify

12   Plaintiff under Sections V and VI of the Services Contract for its expenses, fees, costs, liability

13   and other losses as a result of the acts, errors and omissions of Defendants and their agents and

14   employees set forth herein. Defendants' conduct falls squarely within the indemnification

15   clauses.

16       39.    The unfair labor practice charges resulted in a settlement wherein UHC has been

17   forced to incur back pay liability to Defendants' employees (who were never even on UHC's

18   payroll), in amounts exceeding $279,000, as well as substantial attorneys' fees, costs and

19   administrative expenses relating to these unfair labor practice charges and payment processing.

20   In spite of its representations and contracts, Defendants have stated, including by letter dated

21   August 9, 2006, that it did not believe it had any obligation to indemnify Plaintiff and has not

22   indemnified Plaintiff for its conduct.

23                              **ATTORNEYS' FEES**

24       40.    The Services Contract provides for an award of attorneys' fees and costs to the

25   prevailing party in an action brought as a result of a breach or default under any provision of

26   the Contract. (Exhibit C, § XVII).

27   ///

28   ///

                                        13
                                     COMPLAINT

Irvine 472520.1

## FIRST CAUSE OF ACTION

### (Fraudulent Inducement- Promise Without Intent to Perform)

### (Against All Defendants)

41.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation in Paragraphs 1 though 40, inclusive.

42.    Defendants have made and continue to make false and misleading representations and promises about material matters, without any intention of performing them, as set forth fully above, including, without limitation, that Defendants were/are the sole employer of the employees assigned to UHC, that it will assume all rights and responsibilities as sole employer, that it will not violate any state or federal laws including the National Labor Relations Act, and that it will indemnify and hold UHC harmless for its acts, errors and omissions, including, but not limited to, its repudiation of employer status, its failure to carry out its obligations as the sole employer, including, but not limited to, not terminating its own employees and/or reassigning its employees upon cancellation of its contract with UHC and not defending, indemnifying, or holding UHC harmless for claims made against UHC arising out of Defendants' role in carrying out their duties, including their duty to terminate their employees and to indemnify and defend UHC before the NLRB.

43.    These representations were in fact false when made. The truth was that Defendants represented and agreed to be the employer for the purpose of collecting fees from UHC, all the while, never intending to serve as the true employer of its assigned staffing employees, including without limitation, if it meant these individuals might be represented by a union.

44.    Defendants' promises were made and continue to be made with the intent to defraud, mislead and induce Plaintiff (and other clients) to rely upon them by entering into staffing contracts and employment relationships with Defendants to their detriment and Defendants' pecuniary gain, and were hastily repudiated by Defendants in the face of the union organizing campaign, with no attempt to re-assign their employees or to accept responsibility for their representations, promises and commitments.  On information and belief, Plaintiff

14

COMPLAINT

Irvine 472520.1

1   asserts that Defendants had pre-planned union avoidance strategies that involved repudiation of

2   said employer status before the representations of employer status were made.

3       45.    In justifiable reliance on Defendants conduct, Plaintiff was induced to act,

4   including without limitation, as follows: to enter into the Services Contract with Defendants

5   based on the expectation of UHC that the employees were Defendants' only to find out that

6   UHC had to represent itself in the union organization of employees who Defendants falsely

7   represented and agreed were solely Defendants' own employees, to defend against charges

8   relating to the elimination of the positions of Defendants' employees after Defendants'

9   repudiation of its employer status and abandonment of its employees at UHC's site, to incur

10  substantial costs, attorneys' fees, and liability arising out of Defendants' acts and practices.

11      46.    Plaintiff has been damaged as a result of its reliance on Defendants' fraud,

12  including without limitation as follows: it has incurred substantial attorneys' fees and costs in

13  representing and defending itself in NLRB proceedings relating to Defendants' employees, has

14  had its reputation damaged, incurred significant attorneys' fees to defend itself, incurred

15  administrative and other fees and costs, opportunity costs, expenses, costs, including consultant

16  costs, and over $279,000 in back pay liability, among other damage.

17      47.    As described herein, Defendants have acted with oppression, fraud, malice, a

18  conscious disregard for the rights of others, and/or have authorized or ratified the wrongful

19  conduct, which justifies, in additional to actual damages, an award of punitive damages under

20  Civil Code section 3294, to make an example of and punish Defendants

21                              SECOND CAUSE OF ACTION

22                          (Fraud- Intentional Misrepresentation)

23                              (Against All Defendants)

24      48.    Plaintiff incorporates by reference, as if fully set forth herein, each and every

25  allegation in Paragraphs 1 though 47, inclusive.

26      49.    Defendants made misrepresentations of material fact as set forth fully above,

27  including without limitation that Defendants would serve as the employer of its staffing

28  employees assigned to its clients including UHC, and including the assumption of all related

                                    15
                                 COMPLAINT
Irvine 472520.1

10997833.tif - 7/5/2007 10:18:28 AM

1 | rights and responsibilities and that it retained the sole power and authority to make employment

2 | decisions affecting its assigned staffing employees, including, but not limited to, the sole right

3 | and obligation to terminate and/or remove their employees from a client's site as well as the

4 | obligation to deal with all employment-related issues, including, but not limited to, any and all

5 | union issues affecting those employees.

6 |  50.  These representations were in fact false when made. The truth was that

7 | Defendants represented and agreed to be the employer for the purpose of collecting fees from

8 | UHC, all the while, never intending to serve as the true employer of its assigned staffing

9 | employees, including without limitation, if it meant these individuals might be represented by a

10 | union.

11 |  51.  Defendants knew the misrepresentations were false when they made them, as

12 | evidenced by, among other things, their immediate repudiation of the representations within

13 | days of union presence on the scene, their total abandonment of the terms of the contract, their

14 | non-attempt to locate alternative assignments for their employees when they terminated the

15 | Services Contract with UHC, and their abandonment of their employees.

16 |  52.  Defendants made the representations with the intent to defraud and induce the

17 | Plaintiff to rely on the truth of the promises to its detriment and to enter into a business

18 | relationship with Defendants.

19 |  53.  In justifiable reliance on Defendants' conduct, Plaintiff was induced to act,

20 | including without limitation, as follows: to enter into the Services Contract with Defendants, to

21 | represent itself in the union organization of employees who Defendants represented and agreed

22 | were solely their own employees, to defend against charges relating the elimination of the

23 | positions of Defendants' employees after Defendants' repudiation of its employer status and

24 | abandonment of its employees at UHC's site, to incur substantial costs, attorneys' fees, and

25 | liability arising out of Defendants' acts and practices.

26 |  54.  Plaintiff has been damaged as a result of its reliance on Defendants' fraud,

27 | including without limitation as follows: it has incurred substantial attorneys' fees and costs in

28 | representing and defending itself in NLRB proceedings relating to Defendants' employees, has

16<br>COMPLAINT

Irvine 472520.1

10997833.tif - 7/5/2007 10:18:28 AM

1    had its reputation damaged, incurred significant attorneys' fees to defend itself, incurred

2    administrative and other fees and costs, opportunity costs, expenses, other costs, including

3    consultant costs, and over $279,000 in back pay liability, among other damage.

4       55.    As described herein, Defendants have acted with oppression, fraud, malice, a

5    conscious disregard for the rights of others, and/or have authorized or ratified the wrongful

6    conduct, which justifies, in additional to actual damages, an award of punitive damages under

7    Civil Code section 3294, to make an example of and punish Defendants.

8                   **THIRD CAUSE OF ACTION**

9                (Fraud- Intentional Concealment)

10                  (Against All Defendants)

11       56.    Plaintiff incorporates by reference, as if fully set forth herein, each and every

12    allegation in Paragraphs 1 though 55, inclusive.

13       57.    Defendants concealed and suppressed material facts including without limitation

14    that, despite representing that Defendants would serve as the employer of its staffing employees

15    assigned to its clients including UHC, and including the assumption of all related rights and

16    responsibilities and that they retained the sole power and authority to make employment

17    decisions affecting its assigned staffing employees, including, but not limited to, the sole right

18    and obligation to terminate and/or remove their employees from a client's site as well as the

19    obligation to deal with all employment-related issues, including, but not limited to, any and all

20    union issues affecting those employees, Defendants concealed the plan that Defendants would

21    not serve as the true employer of its staffing employees, including without limitation, if it

22    meant these individuals might be represented by a union.

23       58.    Defendants had a duty to disclose these facts because they made other

24    representations of fact -- that Defendants were the employer, but did not disclose facts which

25    materially qualify the facts disclosed - that Defendants would not serve as the true employer of

26    their staffing employees, including without limitation, if it meant these individuals might be

27    represented by a union. These facts were known and accessible only to Defendants and

28    Defendants knew they were not known or reasonably discoverable by the Plaintiff.

17
COMPLAINT

59.    Defendants also had a duty to disclose these facts because they told Plaintiff and others facts to mislead them and prevent them from discovering the concealed or suppressed fact, i.e. that employer status was unequivocal however, the truth was that Defendants never intended to be the employer of these employees.

60.    Defendants concealed and suppressed these facts with the intent to defraud and induce the Plaintiff to act in detrimental reliance. In justifiable reliance on Defendants' conduct, Plaintiff was induced to act, including without limitation, as follows: to enter into the Services Contract with Defendants, to represent itself in the union organization of employees who Defendants represented and agreed were solely its own employees, to defend against charges relating the elimination of the positions of Defendants' employees after Defendants' repudiation of its employer status and abandonment of its employees at UHC's site, to incur substantial costs, attorneys' fees, and liability arising out of Defendants' acts and practices.

61.    At the time Plaintiff acted, it was unaware of the concealed and suppressed facts (e.g. that Defendants' employer status and responsibility was conditional) and Plaintiff would not have taken the actions it did if Plaintiff had known the actual facts.  Plaintiff would have never entered into the service contract with Defendants and Plaintiff would never have had the need to ask Defendants' employees to leave the UHC site when Defendants cancelled their contract.

62.    Plaintiff has been damaged as a result of its reliance on Defendants' fraud, including without limitation as follows: it has incurred significant attorneys' fees and costs in representing and defending itself in NLRB proceedings relating to Defendants' employees, has had its reputation damaged, incurred administrative and other fees and costs, opportunity costs, expenses, other costs, including consultant costs, and over $279,000 in back pay liability, among other damage.

///

///

///

///

Irvine 472520.1

10937833.tif - 7/5/2007 10:18:28 AM

1  63. As described herein, Defendants have acted with oppression, fraud, malice, a

2 conscious disregard for the rights of others, a conscious disregard for the statutory rights of

3 Plaintiff and/or have authorized or ratified the wrongful conduct, which justifies, in additional

4 to actual damages, an award of punitive damages under Civil Code section 3294, to make an

5 example of and punish Defendants.

6        **FOURTH CAUSE OF ACTION**

7     **(Unlawful, Unfair and Fraudulent Business Practices,**

8       **Cal. B & P Code § 17200, et. seq.)**

9        **(Against All Defendants)**

10  64. Plaintiff incorporates by reference, as if fully set forth herein, each and every

11 allegation in Paragraphs 1 though 63, inclusive.

12  65. Pursuant to sections 17203 and 17204 of the California Business and

13 Professions Code, Plaintiff seeks to obtain restitution, disgorgement, injunctive relief, and other

14 available remedies from Defendants for acts, omissions and business practices, as alleged

15 herein, in violation of section 17200 of the California Business and Professions Code,

16 commonly known as the Unfair Competition Act.

17  66. The conduct of Defendants alleged herein, and as described in Exhibits A

18 through D, violated Section 17200. The acts and business practices, as alleged herein,

19 constituted and constitute, a common, continuous and continuing course of conduct of unfair

20 competition by means of unfair, unlawful and/or fraudulent business acts or practices within the

21 meaning of California Business and Professions Code sections 17200 et. seq.

22  67. Defendants' policy/practice of obtaining business contracts by falsely and

23 fraudulent misrepresenting and holding Defendants out to the public as an employer and/or the

24 exclusive employer of its assigned staffing workers, yet denying they are the employer to avoid

25 potential employer duties, responsibilities and/or liability, is likely to mislead the general public

26 and, consequently constitutes a fraudulent, unfair and/or unlawful business practice under

27 Section 17200.

28 ///

Irvine 472520.1

68.     The illegal conduct alleged herein is continuing and there is no indication that Defendants will cease and desist such activity in the future.

69.     Plaintiff is entitled to full restitution of the losses incurred as a result of Defendants' conduct described herein, including significant attorneys' fees to defend itself, administrative and other fees and costs, opportunity costs, expenses, other costs, including consultant costs, and over $279,000 in back pay liability, among other losses and all other expenditures resulting from Defendants' fraudulent and unfair practices.

70.     Plaintiff is entitled to injunctive relief, including without limitation, an order that Defendants cease and desist all business acts and practices found to be in violation of Section 17200, et. seq., including but not limited to ceasing from making false representations to their customers and prospective customers that they are the employer of the employees they assign to their customers' work sites and providing notification to their customers and prospective customers like UHC of their previous false representations; or alternatively refraining from any further denials to their customers such as UHC that Defendants are, in fact, the employer of the employees they assign to their customers such as UHC.

### FIFTH CAUSE OF ACTION

### (False and Misleading Advertising,

### Cal. B & P Code § 17500 et seq.)

### (Against All Defendants)

71.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation in Paragraphs 1 though 70, inclusive.

72.     Beginning at an exact date unknown to Plaintiff but at least since 2003, Defendants have engaged in a scheme to mislead customers, clients, employees and the general public by a series of misrepresentations. Defendants have committed acts of untrue and misleading advertising, as defined by Business and Professions Code section 17500 by engaging in the acts and practices described herein, including, but not limited to, Exhibits A through D attached hereto, in furtherance of a scheme done with the intent to mislead and induce members of the public to enter into contracts with them.

10937833.tif - 7/5/2007 10:18:28 AM

73. Such false and deceptive advertising includes Defendants' policy/practice of obtaining business contracts by falsely and fraudulently misrepresenting and holding Defendants out to the public as an employer and/or the exclusive employer of their assigned staffing workers, yet repudiating their self-proclaimed employer status to avoid potential employer duties, responsibilities and/or liability, is likely to mislead the general public and, consequently constitutes an fraudulent, unfair and/or unlawful business practice under Section 17200.

74. The acts of untrue and misleading advertising by Defendants described herein, present a continuing threat to members of the public in that said advertising is continuing unabated on Defendants' websites, and on, information and belief, members of the public are continuing to enter into contracts with Defendants based on said advertising. Plaintiff and the other members of the public have no adequate remedy at law.

75. Plaintiff is entitled to full restitution of the losses incurred as a result of Defendants' conduct described herein, including significant attorneys' fees to defend itself, administrative and other fees and costs, opportunity costs, expenses, other costs, including consultant costs, and over $279,000 in back pay liability, among other losses and all other expenditures resulting from Defendants' fraudulent and unfair practices.

76. Plaintiff is entitled to injunctive relief, including without limitation, an order that Defendants cease and desist all business acts and practices found to be in violation of Section 17200, et. seq., including but not limited to ceasing from making false representations to their customers and prospective customers that they are the employer of the employees they assign to their customers' work sites and providing notification to their customers and prospective customers like UHC of their previous false representations; or alternatively refraining from any further denials to their customers such as UHC that Defendants are, in fact, the employer of the employees they assign to their customers such as UHC.

///

///

///

21
COMPLAINT

10937833.tif - 7/5/2007 10:18:28 AM

## SIXTH CAUSE OF ACTION

(Aiding and Abetting/Inducing/Conspiracy

to Violate Business and Professions Code sections 17200 and 17500)

(Against All Defendants)

77.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation in Paragraphs 1 though 76, inclusive.

78.    On information and belief, Plaintiff alleges that individual Rod Crowell knew, was aware of, participated in, conspired, and/or directed the corporate Defendants' fraudulent, unfair, unlawful, false and deceptive activities alleged herein by virtue of all of the conduct alleged herein.

79.    Plaintiff is entitled to full restitution of the losses incurred as a result of Defendants' conduct described herein, including significant attorneys' fees to defend itself, administrative and other fees and costs, opportunity costs, expenses, other costs, including consultant costs, and over $279,000 in back pay liability, among other losses and all other expenditures resulting from Defendants' fraudulent and unfair practices.

80.    Plaintiff is also entitled to injunctive relief, including without limitation, an order that Defendants cease and desist all business acts and practices found to be in violation of Section 17500, et. seq., including false representations that it is the employer of the employees it assigns.

## SEVENTH CAUSE OF ACTION

(Breach of Contract)

(Against All Defendants)

81.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation in Paragraphs 1 though 80, inclusive.

82.    On May 12, 2004, Defendants and UHC entered into the Staffing Services Contract described fully above and attached hereto as Exhibit C. Among other provisions, the Contact provided that Defendants were the sole employer of the employees assigned to work at UHC's Fremont site and that they had the sole and exclusive right to determine all material

22

COMPLAINT

Irvine 472520.1

1  terms and conditions of employment, and the sole and exclusive right to terminate and/or

2  reassign the employment of said employees. The Contract likewise provided that UHC could

3  not hire or terminate Defendants' employees.

4       83.    As described fully above, Defendants breached the Contract beginning in June

5  and July 2004, by repudiating Defendants' employer status and obligations, by not fulfilling

6  their indemnification obligations, and by not removing and/or reassigning Defendants'

7  employees from UHC's site and/or terminating the employment of their employees upon notice

8  that they were terminating the Contract.

9       84.    As a direct and proximate result of Defendants' breach, Plaintiff has incurred

10  substantial losses, including significant attorneys' fees to defend itself, administrative and other

11  fees, opportunity costs and costs, expenses, other costs, including consultant costs, and over

12  $279,000 in back pay liability, among other losses and all other expenditures resulting from

13  Defendants' conduct, and is entitled to attorneys fees and costs for pursuing the instant action

14  under Section XVII of the Contract.

15                              EIGHTH CAUSE OF ACTION

16                                (Contractual Indemnity)

17                                 (Against All Defendants)

18       85.    Plaintiff incorporates by reference, as if fully set forth herein, each and every

19  allegation in Paragraphs 1 though 84, inclusive.

20       86.    Defendants and Plaintiff entered into a contract in which Defendants agreed to

21  two very broad indemnity clauses for losses incurred as a result of any acts, errors or omissions

22  of Staffing Agency or its employees which are quoted fully above in Complaint Paragraphs 38

23  through 41, inclusive.

24       87.    Defendants have breached their contractual obligation to indemnify Plaintiff,

25  which breach is the actual and proximate cause of resulting damages to Plaintiff.

26       88.    Plaintiff has demanded that Defendants meet their indemnity obligations under

27  the Staffing Services Agreement, including by letter dated August 4, 2006. Defendants have

28  rejected said demand and have refused to indemnify Plaintiff for their acts, error and omissions,

Irvine 472520.1

10937833.tif - 7/5/2007 10:18:28 AM