ROBERT YONOWITZ (BAR NO. 132081)
STACEY A. ZARTLER (BAR NO. 160859)
**FISHER & PHILLIPS LLP**
One Embarcadero Center, Suite 2340
San Francisco, CA 94111-3712
Telephone: (415) 490-9000
Facsimile: (415) 490-9001
ryonowitz@laborlawyers.com
szartler@laborlawyers.com

JAMES R. EVANS, JR. (BAR NO. 119712)
MELISSA MAC PHERSON (BAR NO. 233884)
**FULBRIGHT & JAWORSKI L.L.P.**
555 South Flower Street
Forty-First Floor
Los Angeles, CA 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
jevans@fulbright.com
mmacpherson@fulbright.com

Attorneys for Plaintiff
U-HAUL CO. OF CALIFORNIA, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U-HAUL COMPANY OF CALIFORNIA, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>NORTHWEST STAFFING RESOURCES, INC., an Oregon corporation; RESOURCE STAFFING GROUP, INC., an Oregon corporation; DULCICH STAFFING, LLC, an Oregon limited liability corporation, and DOES 1 through 25, inclusive,<br><br>Defendant. | Civil Action No. C07-03848 CRB<br><br>**DECLARATION OF RICARDO BRICENO IN SUPPORT OF U-HAUL CO. OF CALIFORNIA INC.'S MOTION TO TRANSFER TO CENTRAL DISTRICT, OR, IN THE ALTERNATIVE, TO REMAND THIS MATTER TO STATE COURT AND FOR COSTS AND FEES** |

I, Ricardo Briceno, declare:

1. I am an individual over the age of eighteen and am a resident of California. I have personal knowledge of the facts set forth in this declaration, and if called as a witness I could and would testify to such facts.

2. I am currently the Field Relief Supervisor for plaintiff U-Haul Co. of California Inc.'s ("UHC") Marketing Company Number 710 in Fairfield, California. I have held this position since approximately April of 2006. I was previously the UHC Shop Manager in Fremont, California from approximately April of 2004 to April of 2006.

3. In May of 2004, UHC entered into a Staffing Services Contract with Norwest Staffing Resources, Inc. d.b.a. Resource Staffing Group, Inc. ("RSG"). A true and correct copy is attached hereto as Exhibit 1. UHC hired RSG in order to provide staffing to certain UHC field locations.

4. I was the UHC representative who primarily dealt with RSG concerning the staffing agreement. Specifically, all of my communications concerning the agreement with RSG and the fulfillment of its obligations under that agreement were with Rod Crowell of RSG's Sacramento office.

5. As I understand it, under the written agreement between UHC and RSG which is the subject of this action, RSG was to employ and assign certain of its employees at the UHC Fremont location. In exchange, UHC agreed to pay RSG the actual amount paid by RSG to its employees assigned to UHC's Fremont location, plus a premium of 32% of the amount paid by RSG to those employees. <u>See</u> Ex. 1, § I(a); letter dated May 12, 2004, a true and correct copy of which is attached hereto as Exhibit 2.

6. In the contract, RSG represented and agreed that it was an independent contractor and that individuals assigned to UHC were not U-Haul employees, but rather, employees of RSG. <u>See</u> Ex. 1, §I(b). Under the contract, RSG was to

DOCUMENT PREPARED ON RECYCLED PAPER

provide benefits to these employees, communicate work rules, and conduct hiring and terminations. Id. at §§I(c), (d).

7. In the contract, RSG also represented and agreed that, as the employer, RSG would maintain all necessary personnel, payroll and other records for its employees assigned to UHC and that it would compute and process the employees' wages. See Ex. 1, §I(c). To that end, UHC faxed time sheets for the RSG employees working at the Fremont location to RSG in Sacramento to process the paychecks for the RSG employees. UHC paid and remitted all invoices it received from RSG to RSG's Sacramento office.

8. In June of 2004, when RSG was accused of unfair labor practices, it repudiated its staffing agreement with UHC.

9. All interactions that UHC had with RSG occurred in California. UHC has never dealt with any office of RSG other than the California office.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 23rd day August, 2007 in Fairfield, California.

Ricardo W Briceño

Ricardo Briceno

DOCUMENT PREPARED ON RECYCLED PAPER

# EXHIBIT 1

AMERCO.    AMERCO.

# STAFFING SERVICES CONTRACT

This contract made this 12th day of May, 2004, ____________ dated for reference purposes only, by and between the entitie(s) identified in Exhibit A, attached hereto U-Haul 189000, (hereinafter "U-HAUL") and NSR, DBA. Resource Staffing Group, (hereinafter "Staffing Agency").

Subject to the following terms and conditions, Staffing Agency agrees to assign its employees to U-Haul based on the fee schedule detailed in Exhibit A on an as-required basis to be determined by U-Haul at U-Haul's request and sole discretion.

I CONTRACTUAL RELATIONSHIP

(a) It is mutually agreed that U-Haul retains Staffing Agency to assign certain of its employees to fill U-Haul's need for temporary personnel upon the terms and conditions set forth in this Agreement.

(b) It is understood and agreed that Staffing Agency is an independent contractor and that all individuals assigned to U-Haul are employees of Staffing Agency and not U-Haul.

(c) As the employer, Staffing Agency shall, among other things: maintain all necessary personnel, payroll and other records for its employees assigned to U-Haul; compute its employees' wages and withhold applicable federal, state and local taxes, federal social security payments and all other required withholdings;

(i) remit employee withholdings to the proper governmental authorities and make employer contributions for federal FICA, Workers' Compensation insurance, and federal and state unemployment insurance payments;

(ii) pay net wages and fringe benefits, if any, directly to its employees;

(iii) verify employment eligibility in conformity with federal immigration laws and maintain all necessary records for its employees assigned to U-Haul, including Form I-9's and:

(iv) obtain from each of its employees, prior to their assignment to U-Haul, a signed Acknowledgment & Confidentiality Agreement for Temporary Workers in the form acceptable to U-Haul. (Attached hereto as Exhibit "B") Staffing Agency agrees that it shall not assign to U-Haul any Staffing Agency employee who refuses to sign and agree to the terms of the Staffing Agency Acknowledgment & Confidentiality Agreement for Temporary Workers.

(v) Obtain from each of its lenders written assurance that the lender does not have a security interest in any receivables due from U-Haul to Staffing Agency that is superior to the interests of Staffing Agency's employees in those receivables.

(d) Staffing Agency shall have the sole right and responsibility to recruit, interview, test, evaluate, hire, supervise, determine compensation, promote, discipline, and discharge its employees assigned to U-Haul. Staffing Agency employees shall not be entitled to holidays, vacations,



©2004 U-HAUL® INT'L

disability, insurance, pensions or retirement plans, or any other benefits offered or provided by U-Haul to its direct employees. Prior to assignment to U-Haul, Staffing Agency shall require all assigned employees to sign an agreement (attached hereto as Exhibit "B") acknowledging their understanding that they are not entitled to U-Haul benefits offered to its direct employees and waiving any right that may be deemed to exist or that may come into existence with respect to such benefits.

(e) U-Haul may hire a Staffing Agency employee with no additional investment after such employee has been on assignment for ________________ hours.

## II SELECTION AND ASSIGNMENT OF TEMPORARY WORKERS

Upon receipt of a completed order from U-Haul, in the form supplied in Exhibit C, Staffing Agency shall assign a worker whose skills and preferences match U-Haul's needs. Staffing Agency shall advise the worker about the job, wage rate and the length of the assignment and provide the applicable job description. The worker shall be solely responsible for obtaining execution of a time card signed by an authorized U-Haul representative, verifying the hours worked. Staffing Agency may arrange to have paychecks delivered on site.

Staffing Agency shall be responsible for ensuring compliance with the Americans with Disabilities Act with respect to its workers assigned to U-Haul and Staffing Agency agrees to pay the cost of all reasonable accommodation needed to permit the disabled worker to perform the essential functions of the assignment, and shall indemnify and hold U-Haul harmless from all costs of any such reasonable accommodation.

Where a worker is assigned to perform services relating to a specific project or manufacturing cycle, the assignment will last for the duration of the project or cycle, and this shall in no way change the worker's temporary status or the fact that the worker remains an employee of the Staffing Agency and not U-Haul.

U-Haul may, for any reason, advise Staffing Agency to have Staffing Agency remove any of the temporary personnel assigned to it by Staffing Agency and request that they not be returned to U-Haul; provided, that this arrangement shall in no way affect the right of Staffing Agency, in its sole discretion as the employer, to hire and/or terminate any individual from the employ of Staffing Agency or to assign or reassign any individual to any other client.

Staffing Agency shall be responsible for all selection and background checks. Staffing Agency shall recruit, interview, test, screen, and ensure compliance with all legally required pre-employment obligations for all workers to be assigned to U-Haul's facilities prior to their assignment to U-Haul.

Staffing Agency shall also be responsible for conducting all appropriate background checks on its workers assigned to U-Haul, including verifying all references, criminal convictions, education, prior employment and other information provided by the workers and administer all required drug testing, credit searches or other background checks, prior to their assignment to U-Haul.

Reports: Staffing Agency shall produce such reports as U-Haul may reasonably request pertaining to assigned workers. Staffing Agency shall furnish to U-Haul any other reports in such formats and at such intervals as U-Haul may reasonably request.

In the event the worker (a) has a need for a leave subject to the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq., or subject to any comparable state law, (b) is called for jury duty, (c) is called to active duty in the armed forces of the United States, or (d) has any other statutory right to be excused from and returned to work, the worker shall be excused by Staffing Agency from the assignment and upon availability shall be reassigned by Staffing Agency as required by law.

## III WORKER'S EMPLOYMENT STATUS AND RECORDS

Staffing Agency and not U-Haul is the employer of the worker and retains the sole right to recruit, interview, test, hire, assign, evaluate, discipline and discharge the worker, and to establish and modify wages and benefits, including vacation and other paid and unpaid leave, and to prepare and maintain all payroll records and pay and withhold all wages and related employment taxes and deductions.



©2004 U-HAUL® INT'L

Staffing Agency and its employees agree that they will not at any time take, misappropriate, misuse or improperly disclose any confidential information or property of U-Haul such as medical and personnel information, client lists, files, data, books, records, accounts or any other confidential information concerning U-Haul, its agents and employees, or its business operations. This prohibition includes all forms of computer data, including email. Computer data, including e-mail, is recognized by Staffing Agency as the trade secret property of U-Haul.

Any and all discoveries and/or inventions (which shall include improvements and modifications) relating to work performed by assigned employees, or relating to matters disclosed to assigned employees in connection with work to be performed, or suggested by such matters, whether or not patentable, which discoveries and/or inventions are made or conceived by assigned employees, solely or jointly with others, during the term of any assignment (regardless of whether conceived or developed during working hours) or during a period of one (1) year thereafter, shall be the property of U-Haul as "work made for hire" to the extent provided by sections 101 and 201(b) of the Copyright Act, 17 U.S.C. 101, et seq., and such discoveries and/or inventions shall be promptly disclosed to U-Haul. U-Haul shall have the right to file and prosecute, at its own expense, all patent applications, whether U.S. or foreign, on said discoveries and/or inventions. Assigned employees shall, during any assignment with U-Haul or any time thereafter, provide to U-Haul all documents, information, and assistance requested for the filing or prosecution of any such patent application, for the preparation, prosecution, or defense of any legal action or application pertaining to such discoveries and/or inventions, and for the assignment or conveyance to U-Haul of all right, title, and interest in and to such discoveries and/or inventions, patent applications, and letters patent issuing thereon.

Staffing Agency shall prepare and maintain records of illnesses and injuries, including all workers' compensation injuries, of the worker arising from performing services pursuant to the assignment. Upon request, Staffing Agency will provide U-Haul with copies of any reports of injuries regarding assigned workers.

Staffing Agency shall prepare and maintain records regarding hours worked and payment of wages and benefits due to the assigned worker, which will be made available to U-Haul.

If an assigned worker has a grievance regarding treatment while performing services on the assignment, such grievance shall be presented to and resolved by Staffing Agency.

Assigned workers shall not be entitled to participate in U-Haul's Employee Stock Ownership Plan (ESOP), bonus, profit sharing, 401K, medical and dental insurance, vacation, sick leave or any other benefits provided to employees of U-Haul. Staffing Agency shall have the sole duty and right to determine the compensation and benefits to be provided to its employees as well as vacation, leaves of absence and all other benefits.

Staffing Agency shall prepare and maintain all records pertaining to services performed under this Contract for a period of at least seven years. This includes, but is not limited to, all time cards, payroll records, drug testing results and personnel files pertaining to the assigned workers. During this period, U-Haul shall have the right to obtain copies of such records.

## IV. INSURANCE

Without limiting any of its obligations or liabilities, Staffing Agency, while performing services for U-Haul, shall maintain at its sole cost and expense with acceptable companies the following minimum insurance coverage:

| COVERAGE | LIMITS |
|---|---|
| General Liability | $1,000,000 |
| Umbrella | $1,000,000 |
| Worker's Compensation | Statutory Limits |
| Employer's Liability | Statutory Limits |
| Professional Liability | As Agreed by the Parties |
| Employment Practices Liability | |
| Bond | The amount necessary to secure two weeks worth of wages and benefits that are payable and due by Staffing Agency to its Employees assigned to U-Haul. |

©2004 U-HAUL® INT'L

The above coverage shall name U-Haul as an additional insured and Staffing Agency will add an alternative employer endorsement to their Workers' Compensation policy naming U-Haul as the alternative employer. The coverage shall contain a severability of interest clause. Staffing Agency shall furnish U-Haul with two properly executed certificates of insurance prior to the commencement of any operation hereunder and shall notify U-Haul no less than thirty days in advance of any material changes or cancellation of the above coverage. Notice shall be sent to:

U-Haul International, Inc.
2727 N. Central Ave.
Phoenix, Arizona 85004
Attn: Human Resources - Employment

## V. COMPLIANCE WITH LAWS

Staffing Agency shall observe and comply with all local, state and federal laws, rules, regulations and ordinances now or hereinafter in force that in any way pertain to these contracted services. This includes, but is not limited to, compliance with all laws pertaining to wages and hours of work, discrimination, unemployment, posting notices, workers' compensation, record keeping, and taxes. Staffing Agency agrees not to harass, discriminate against, or retaliate against any employee because of his or her race, national origin, age, sex, religion, disability, marital status, or other category protected by law. In addition, Staffing Agency shall verify that any worker provided to U-Haul for assignments that may involve the driving of U-Haul equipment has a valid driver's license, is eighteen (18) years of age or older and has all applicable Department of Transportation, state motor vehicle department and other applicable clearances. Staffing Agency accepts exclusive liability for noncompliance with the foregoing laws and shall release, indemnify, defend and hold harmless U-Haul and any affiliated or related corporations, employees or agents from any and all claims, liabilities, damages, demands, judgments, costs or expenses (including attorneys' fees and expert witness fees) of any kind or nature which Staffing Agency, an employee of Staffing Agency, or any other third party may have which arise directly or indirectly under any theory of law pertaining to these contracted services. The foregoing duties of indemnity shall apply notwithstanding any negligence of U-Haul or its affiliated or related corporations, employees or agents which may have occurred with respect to any such matter.

©2004 U-HAUL® INT'L

## VI INDEMNIFICATION

Staffing Agency agrees to indemnify, defend and hold U-Haul and any affiliated or related corporations, its agents and employees, harmless from and against any and all liability, expenses (including court costs, attorneys' fees, and expert witness fees), and claims for damage of any nature whatsoever, whether known or unknown, which U-Haul may incur, suffer, become liable for, or which may be asserted or claimed against U-Haul as a result of the acts, errors, or omissions of Staffing Agency or Staffing Agency's employees, including, but not limited to, any claims asserted by federal, state or local taxing authorities, all rights or claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, as amended, the Rehabilitation Act of 1973, as amended, the Portal-to-Portal Pay Act of 1947, as amended, Fair Labor Standards Act, as amended, the Family and Medical Leave Act of 1993, the Age Discrimination in Employment Act, the Worker Adjustment Retraining and Notification Act, the Equal Pay Act, the National Labor Relations Act, the Employees Retirement Income Security Act, and all other applicable state, local or federal statutes, including those that provide benefits or rights to employees, and all common law causes of action, including claims for breach of contract (express or implied), negligent supervision, hire or retention, tortious interference with contract, retaliation, failure to pay wages, bonuses, commissions or other benefits, wrongful discharge, defamation, intentional or negligent infliction of emotional distress, tort, or any other personal injury or damages, and all claims for wages, bonuses, allowances, benefits, or other compensation in money or in kind and/or any claims asserted by Staffing Agency's employees arising out of their employment or termination of employment with Staffing Agency or their assignment or termination of assignment with U-Haul, including, but not limited to, all claims by such workers for personal injury of any type. Staffing Agency and U-Haul intend that Staffing Agency's obligation to indemnify U-Haul be construed broadly so as to provide the greatest protection to U-Haul and ensure that the parties' staffing arrangement contemplated by this Agreement has no adverse financial or administrative impact on U-Haul. Staffing Agency agrees that U-Haul may compromise or settle any such claim without affecting Staffing Agency's indemnification obligations hereunder.

## VII REJECTION OF WORKER

U-Haul may reject or discontinue the services of, and exclude or remove from U-Haul facilities, any worker provided by Staffing Agency for any reason not prohibited by law.

VIII SURVIVING ARTICLES

The provisions of Articles V and VI shall survive the termination of this contract.

IX. ENTIRE CONTRACT

This contract constitutes the entire contract between the parties. All terms and conditions contained in other writings, if any, previously executed by the parties shall be deemed to be superseded hereby.

X. MODIFICATION OF CONTRACT

No modification or amendment of this Contract shall be deemed effective unless in writing and signed by the parties hereto.

XI WAIVERS

No waiver by U-Haul of any provision hereof shall be deemed a waiver of any other provision. U-Haul's consent to or approval of any act shall not be deemed to render unnecessary the obtaining of U-Haul's consent to or approval of any subsequent act by Staffing Agency.

XII DRUG TESTING

Workers shall be required to be tested for drugs or other controlled substances prior to assignment to U-Haul, as required by law or agreement of Staffing Agency and U-Haul. Any worker involved in a work-related accident while performing services pursuant to assignment hereunder will be required to take a drug test at a facility designated by Staffing Agency. A copy of the drug test results may be presented to U-Haul, if otherwise permitted by law. Workers assigned to U-Haul may also be tested for any other reason permitted by law. Any worker who has a positive drug test will not be eligible for assignment under this contract.

XIII SAFETY

The worker must follow all U-Haul procedures and safety rules. The worker must provide and use personal safety protective equipment necessary or appropriate to the assignment.

XIV. NONEXCLUSIVE AGREEMENT

U-Haul retains the right to contract for similar temporary services with independent contractors other than Staffing Agency.

XV. SEVERABILITY

If any of the provisions herein are determined to be invalid by a court, arbitrator, or government agency of competent jurisdiction, it is agreed that such determination shall not affect the enforceability of the other provisions herein.

XVI ASSIGNMENT

Staffing Agency shall not assign this Agreement, its rights and/or duties hereunder, or any interest herein, without the prior written consent of U-Haul.

©2004 U-HAUL® INT'L

**XVII NOTICES**

Any notices under this Agreement shall be in writing, and any written notice or other document shall be deemed to have been duly given on the date of personal service on the parties or on the tenth (10th) business day after mailing, if the document is mailed (by registered or certified mail), addressed to the parties at the addresses set forth below or at the most recent address specified by the addressee through written notice under this provision. Failure to conform to the requirement that mailings be done (by registered or certified mail) shall not defeat the effectiveness of notice actually received by the addressee.

If mailed to Client:

U-Haul International, Inc.
2727 N. Central Ave.
Phoenix, AZ 85004
Attn: Human Resources – Employment

If mailed to Staffing Agency:

[Staffing Agency] ____________________
[Address] ____________________
____________________
[Attn:] ____________________

**XVIII ATTORNEY'S FEES**

In the event that any action is brought by either party hereto as a result of a breach or default under any provision of this Agreement, the prevailing party in such action shall be awarded reasonable attorney fees and costs plus any fees paid for collection of any account in addition to any other relief to which the party may be entitled.

**XIX DURATION**

This Agreement shall be renewed automatically for successive one-year periods on the first and subsequent anniversary dates hereof unless either party gives notice of cancellation at least 30 days prior to an anniversary date. This Agreement may be canceled by either party at any time upon 30 days written notice. This Agreement may be immediately terminated by either party with written notice, upon a material breach of the terms and conditions of this Agreement. The anniversary date is the last date signed by all parties.

Staffing Agency

By: [signature]

Title: Branch Mgr.

Date: 5/12/04

U-Haul

By: ____________________

Title: ____________________

Date: ____________________

©2004 U-HAUL® INT'L

# HOLD HARMLESS AGREEMENT

U-Haul agrees to waive all rights to make a claim against NSR D.B.A Resource Staffing Group and to relieve NSR D.B.A Resource Staffing from all liability and responsibility for any damage, loss, or expense which U-Haul incurs as a result of a staffing agency employee engaging in driving an automobile or other motor vehicle. This agreement does release Staffing Agency in regards to workers compensation issues.

[signature]
U-Haul Representative Signature

Ricardo M. Briceño
U-Haul Representative Name (Printed)

5.12.04
Date

[signature]
Staffing Representative Signature

Rod Crowley
Staffing Name (Printed)

5/12/04
Date

©2004 U-HAUL® INT'L.

# EXHIBIT 2



Northwest Staffing Resources, Inc.
Resource Staffing Group, Inc.
Northwest Staffing Group, Inc.

May 12, 2004

Rick Briceno
Shop Manager
U-Haul International
44511 Grimmer Blvd.
Fremont, CA 94538

Dear Rick,

Thank you for taking time to meet with me and giving Resource Staffing Group the opportunity to provide our service. Resource Staffing Group (RSG) is commited to creating and maintaining a solid and long-term relationship with UHAUL.

As in our meeting, we discussed the positions you have a need for. All employees pay rolled from UHAUL will be at a 32% mark-up. We are confident in our ability to provide not only the highest level of service, but also the greatest value.

All associates who are on assignment with UHAUL are eligible for medical, dental, and vision... Associates are also available to receive holiday pay immediately and one week's vacation pay after one year of employment. This is at no additional cost to UHAUL.

Let me assure you Rick, that the staff and management of RSG are committed to one and only one objective; your satisfaction as it relates to our staffing services. As always, our goal is to assist UHAUL in attaining your objective of employing qualified, dependable employees at a competitive rate.

X Rod Crowell
Print (RSG Representative)

X Rick Briceño
Print (U-haul Representative)

X [signature] 5/12/04
Signature Date

X [signature] 5-12-04
Signature Date

3604 Fair Oaks Blvd, Suite 160, Sacramento, CA 95864
916.679.0430 • Fax 916.679.0442 • www.resourcestaff.com

Office locati throughout
OREGON
WASHINGT
IDAHO
CALIFORNI

© 2004 U-HAUL® INT'L

**PROOF OF SERVICE**

I, Maria Vara, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 555 South Flower Street, Forty-First Floor, Los Angeles, California 90071. On August 24, 2007, I served a copy of the within document(s):

**DECLARATION OF RICARDO BRICENO IN SUPPORT OF U-HAUL CO. OF CALIFORNIA INC.'S MOTION TO TRANSFER TO CENTRAL DISTRICT, OR, IN THE ALTERNATIVE, TO REMAND THIS MATTER TO STATE COURT AND FOR COSTS AND FEES**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed __________ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a __________ agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ I caused said document to be sent via e-mail to the Court for distribution to the interested parties at the e-mail addresses as provided to the Electronic Case Filing System pursuant to General Order No. 45.

David Miller, Esq.
MILLER & ANGSTADT
1910 Olympic Boulevard, Suite 220
Walnut Creek, CA 94596

Phone: (925) 930-9255
Fax: (925) 930-7595
Email: dmiller@ma-law.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 24, 2007, at Los Angeles, California.

Maria Vara